IN THE UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIKORSKY AIRCRAFT CORPORATION,<br>6900 Main Street, M/S 106A<br>Stratford, CT 06615-9129<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE,<br>1000 Defense Pentagon<br>Washington, DC 20301-1000,<br><br>and<br><br>DEFENSE CONTRACT MANAGEMENT<br>AGENCY,<br>6350 Walker Lane<br>Alexandria, VA 22310-3241<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR**
**DECLARATORY AND PERMANENT INJUNCTIVE RELIEF ("REVERSE-FOIA")**

Plaintiff Sikorsky Aircraft Corporation ("Sikorsky"), by counsel, files this complaint for declaratory and permanent injunctive relief against the United States Department of Defense and the Defense Contract Management Agency, and states as follows:

**NATURE OF THE ACTION**

1. This action arises from the recent decision of the Defense Contract Management Agency ("DCMA"), a subagency of the United States Department of Defense ("DOD"), to release certain confidential information obtained from Sikorsky pursuant to a Freedom of

Information Act ("FOIA") request submitted by a reporter for News Channel 8, WTNH-TV of New Haven, Connecticut ("Channel 8's FOIA request"). Sikorsky requests the Court to declare that the information in question constitutes confidential commercial information that is exempt from disclosure under FOIA Exemption 4 and prohibited from disclosure by the Trade Secrets Act. Sikorsky also requests the Court to permanently enjoin DOD and DCMA from releasing the information. Sikorsky is not seeking a preliminary injunction at this time because the applicable regulations prohibit release of the information "until the outcome of [this] court action is known," 32 C.F.R. § 286.25(e), and DCMA has represented that it will not release the information until the Court rules so long as Sikorsky files a suit in a United States District Court before December 13, 2005.

## PARTIES

2.  Plaintiff Sikorsky is a Delaware corporation with its principal place of business in Stratford, Connecticut. Sikorsky, *inter alia*, designs and manufactures helicopters for commercial and military uses. Sikorsky is a wholly-owned subsidiary of United Technologies Corporation.

3.  Defendant DOD is a Department of the Executive Branch of the United States Government. DOD is responsible for and controls the DCMA.

4.  Defendant DCMA is a subagency of DOD with its headquarters at 6350 Walker Lane, Alexandria, Virginia. The Defense Contract Management Agency-East ("DCMA-East") is a regional office of DCMA with its headquarters at 495 Summer Street, Boston, Massachusetts.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, including FOIA and the

Trade Secrets Act. Sikorsky also invokes this Court's authority to issue declaratory judgments under 28 U.S.C. § 2201-2202. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (e).

## STATEMENT OF FACTS

6.  Sikorsky is a world leader in the design and manufacture of advanced helicopters for military and commercial customers. Sikorsky helicopters are used by all five branches of the United States armed forces along with military services and commercial operators in approximately 40 nations.

7.  Sikorsky's core military production programs are based on variants of the H-60 helicopter. H-60 derivative helicopters are manufactured for a multiplicity of missions with the United States Army, Navy, Air Force and Coast Guard. The H-60 variants that Sikorsky manufacturers for the United States Army are called the BLACK HAWK helicopter. Other variants of the H-60 manufactured for the U.S. armed forces include the Navy MH-60S KNIGHTHAWK™ and the HH/MH-60G PAVE HAWK™. The international versions of the BLACK HAWK and SEAHAWK® helicopters are designated "S-70" and serve in the armed forces of nearly 25 countries.

8.  Sikorsky's CH-53E SUPER STALLION™ and MH-53E SEA DRAGON™ heavy-lift helicopters are flown by the United States Marine Corps and Navy, respectively. The SUPER STALLION helicopter transports personnel and equipment, and the SEA DRAGON helicopter is used in anti-mine warfare missions. Variants of these aircraft are flown by the armed forces of foreign governments, including Israel and Germany.

9.  On the civilian (commercial) side, Sikorsky manufactures and sells the S-76® and the S-92™ helicopters. Sikorsky's S-76 helicopter is in the intermediate helicopter class

(defined as having a gross weight of 7,000 to 15,000 lbs.), and is flown all over the world by corporate/VIP, offshore oil, search and rescue, and emergency medical services operators. The Sikorsky S-92 is in the medium helicopter class (gross weight of 15,000 to 35,000 lbs.), and is used to perform missions that are similar to the S-76; although the S-92 is also being marketed and sold to governments in a military configuration referred to as the H-92™.

10. Sikorsky has adopted extensive proprietary policies and procedures to ensure the quality of its helicopters. DCMA is responsible for monitoring and auditing Sikorsky's compliance with the quality assurance procedures under its contracts with the United States Government. DCMA-East is the DCMA office responsible on behalf of the Government for oversight of Sikorsky's quality assurance.

11. DCMA-East personnel sometimes issue Corrective Action Requests ("CARs") to Sikorsky based upon information that they obtain in monitoring Sikorsky's operations and inspecting its products. These CARs generally identify potential nonconformances to contract or specification requirements, request Sikorsky to address the alleged nonconformances, and describe the corrective actions that may have been taken to correct them.

12. DCMA-East and Sikorsky have historically treated the CARs and Sikorsky's responses thereto as confidential in view of the proprietary nature and competitive sensitivity of the information in those documents, and the adverse impact that their disclosure would have on DCMA's ability to obtain similar information from Sikorsky and other DOD contractors in the future. Upon information and belief, DCMA has never released a CAR to the recipient's competitors or to the public. Nor has DCMA ever disclosed a contractor's response to a CAR to the contractor's competitors or to the public. Likewise, Sikorsky and other DOD contractors do

not disclose CARs or responses thereto outside of their companies, and they typically limit the number of persons within their company who are given access to those documents.

13. Channel 8's FOIA request, dated March 2, 2004, sought from DCMA-East copies of all CARs issued to Sikorsky that relate to production of the BLACK HAWK helicopter and its H-60 variants during the twelve-month period preceding March 2, 2004. Channel 8's FOIA request also sought copies of Sikorsky's responses to these CARs.

14. DCMA-East responded to Channel 8's FOIA request on May 7, 2004. DCMA-East stated that the documents responsive to Channel 8's FOIA request were exempt from release under FOIA Exemption 4 because release of the information in these documents "will significantly impair DCMA's ability to obtain the same quality of information from Sikorsky and from other Defense contractors in the future and will have an adverse impact on the effectiveness of the DCMA Quality Assurance Program."

15. DCMA-East's denial of Channel 8's FOIA request was appealed to DCMA headquarters, in Alexandria, Virginia (hereinafter referred to as "DCMA Headquarters") on July 2, 2004.

16. In a letter to Sikorsky, dated December 15, 2004, DCMA Headquarters wrote that "the DCMA FOIA Appeal Authority is of the opinion that release of almost all of the documents is appropriate." However, acknowledging that Sikorsky had never been afforded the opportunity to address whether the documents responsive to Channel 8's FOIA request contained proprietary information or were otherwise exempt from disclosure under FOIA Exemption 4, DCMA Headquarters gave Sikorsky until January 14, 2005 to review the responsive documents and to provide valid objections to their release. DCMA Headquarters stated that "[i]f we have not heard

from Sikorsky by [January 14, 2005], all of the documents not identified as exempt by DCMA will be released to the requester."

17. In a letter, dated December 17, 2004, Sikorsky requested until February 4, 2005 to respond to the DCMA Headquarters letter. This request was granted by letter dated January 5, 2005.

18. In an e-mail to DCMA Headquarters, dated January 27, 2005, Sikorsky requested until February 11, 2005 to respond to DCMA Headquarters' December 15, 2004 letter. This request was approved in an e-mail dated January 28, 2005.

19. On February 11, 2005, Sikorsky submitted its response to DCMA Headquarters' December 15, 2004 letter. Sikorsky's response and supporting affidavits explained that the documents deemed responsive to Channel 8's FOIA request were exempt from disclosure under FOIA Exemption 4 because:

    a. The information in those documents was voluntarily obtained from Sikorsky and is not information of a kind that Sikorsky customarily makes available to the public, and is therefore exempt from disclosure under *Critical Mass Energy Project v. Nuclear Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992);

    b. Even if Sikorsky was required to provide the information in the documents, that information was nevertheless exempt from disclosure because its disclosure would "impair the government's ability to obtain necessary information in the future." *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974); and

  c. Disclosure of the information in question would likely cause Sikorsky substantial competitive harm because that information could be used by Sikorsky's competitors to disparage Sikorsky's products and proposals with Sikorsky's customers and to improve their own proposals, thereby allowing the competitors to underbid Sikorsky and deprive it of sales. *National Parks*, 498 F.2d at 770.

20. The affidavits submitted by Sikorsky established that Sikorsky voluntarily provided the information in the CARs and in the responses, and that Sikorsky did not customarily make that type of information available to the public. These affidavits also demonstrated that other DOD contractors and DCMA have historically treated the information in the CARs and in the responses as confidential and that this information is not disclosed to competitors or to the public.

21. Sikorsky's affidavits also demonstrated that release of the information in the CARs and in the responses would force Sikorsky to seriously consider measures to limit the extent of its cooperative information-sharing relationship with DCMA and that such measures, if adopted, would impair the ability of DCMA to obtain necessary information from Sikorsky in the future. The measures identified by Sikorsky included: (1) aggressively challenging each CAR, thereby requiring DCMA to specifically demonstrate that each alleged deficiency was in fact contrary to a particular contract requirement, specification, or provision; (2) discontinuing Sikorsky's practice of sharing the results of its internal improvement quality reviews with DCMA; (3) discontinuing Sikorsky's practice of inviting DCMA to participate in Sikorsky's internal quality audits and meetings; and (4) discontinuing Sikorsky's practice of providing DCMA with access to Sikorsky's internal quality-related documents. Sikorsky's affidavits also

demonstrated that other DOD contractors would likely consider adopting similar measures to mitigate the substantial harm to their competitive position that would occur if DCMA were to begin releasing CARs and contractors' responses thereto to the public. These affidavits provided further factual support for DCMA-East's findings — which were based upon DCMA-East's "discussions with Quality Assurance Professionals within DCMA" — that release of the information in the requested CARs and responses would significantly impair DCMA's ability to obtain the same detail and quality of information from Sikorsky and other DOD contractors in the future and would have an adverse impact on the efficiency and effectiveness of the DCMA Quality Assurance Program.

22.   Sikorsky's affidavits further demonstrated that the company faces fierce competition in U.S. and foreign markets for military and civilian helicopters and that Sikorsky's competitors would undoubtedly use the information in the CARs and in the responses to unfairly disparage Sikorsky's manufacturing processes and quality assurance system in the eyes of Sikorsky's customers and potential customers. The affidavits noted this was particularly true of Sikorsky's European competitors, who, to the best of Sikorsky's knowledge, are not subject to DCMA quality assurance oversight and who do not have DCMA inspectors residing in their facilities. Sikorsky's affidavits detailed how its competitors would attempt to use the information in the CARs and in the responses to make their own products and proposals more attractive to the customer and thereby underbid Sikorsky in ongoing and future competitions.

23.   Finally, the affidavits submitted by Sikorsky established that the CARs and in the responses contain critical details regarding Sikorsky's proprietary manufacturing processes and quality control system, and that disclosure of this information would likely cause Sikorsky substantial competitive harm by providing its competitors insights into the strengths and

weaknesses of the company's manufacturing processes and quality control system. The affidavits demonstrated that Sikorsky's competitors could use these insights to their advantage in (1) marketing their products; (2) structuring their proposals for domestic and international procurements; and (3) adjusting their own manufacturing techniques based on the information they obtained from the release of Sikorsky's proprietary information.

24.     In a letter, dated December 1, 2005, the DCMA FOIA Appeal Authority informed counsel for Sikorsky that DCMA intended to grant Channel 8's FOIA appeal in part and to deny it in part. The letter stated that DCMA agreed with Sikorsky's contention that the information in the responses to the CARs was voluntarily provided to DCMA and thus exempt from disclosure, but asserted that the information in the CARs was not voluntarily provided and was therefore governed by *National Parks* rather than by *Critical Mass*. With respect to the "substantial impairment" test of *National Parks*, DCMA stated that DCMA-East's findings – that release of the information in Sikorsky's CARs would impair DCMA's ability to obtain similar information from Sikorsky and other DOD contractors in the future and would undermine the effectiveness and efficiency of the DCMA Quality Assurance Program – had been rejected by DCMA's Director of Contract Operations on May 31, 2005. DCMA did not explain the factual basis, if any, for this rejection. Instead, DCMA stated simply that "[b]ased upon [the May 31, 2005] determination, the DCMA[-East] basis for withholding the CARs is inapplicable." As for the alternative "competitive harm" test, DCMA dismissed the showing of substantial competitive harm in Sikorsky's affidavits on the ground that the competitive harm shown by Sikorsky was of a different kind than the competitive harm found in *Lion Raisins Inc. v. U.S. Department of Agriculture*, 354 F.3d 1072 (9th Cir. 2004). DCMA's letter concluded by announcing its

intention to release the requested CARs (with certain limited redactions) on December 12, 2005 unless Sikorsky filed suit in a United States District Court before that date.

25. On December 2, 2005, at the request of counsel for Sikorsky, DCMA informed counsel by e-mail that the agency intended to release the requested CARs (with redactions) on December 13, 2005 unless Sikorsky filed a "reverse" FOIA suit in a United States District Court before that date.

26. Sikorsky will suffer irreparable harm from the release of the information at issue.

27. There will be no harm to the government from protecting the information at issue against the release to the public or to an FOIA requester.

28. Protecting against the release of the information at issue will serve the public interest by fostering fair competition, facilitating the effectiveness of DCMA's quality control program, and preserving the willingness of contractors to freely and voluntarily provide DCMA with information on their manufacturing processes and quality control systems.

## COUNT I
### (FOIA EXEMPTION 4)

29. Sikorsky hereby incorporates by reference paragraphs 1-28 above.

30. The information at issue is confidential commercial information obtained from a person that is exempt from disclosure under FOIA Exemption 4, 5 U.S.C. § 552(b)(4). Release of the information by DCMA or DOD is therefore not in accordance with law under Section 706 of the APA, 5 U.S.C. § 706.

## COUNT II
### (TRADE SECRETS ACT)

31. Sikorsky hereby incorporates by reference paragraphs 1-30 above.

32. The information at issue constitutes trade secrets under the Trade Secrets Act, 18 U.S.C. § 1905. Disclosure by DCMA or DOD of the information at issue is prohibited by the Trade Secrets Act and therefore not in accordance with law under Section 706 of the APA, 5 U.S.C. § 706.

## COUNT III
## (ARBITRARY AND CAPRICIOUS AGENCY ACTION)

33. Sikorsky hereby incorporates by reference paragraphs 1-32 above.

34. DCMA's decision to release the information at issue is arbitrary and capricious under Section 706 of the APA, 5 U.S.C. § 706.

## COUNT IV
## (DECLARATORY JUDGMENT ACT)

35. Sikorsky hereby incorporates by reference paragraphs 1-34 above.

36. This Court has authority pursuant to 28 U.S.C. §§ 2201-2202 to declare the rights of Sikorsky with respect to the information at issue and DCMA's proposed actions, as follows:

   a. The information at issue is confidential commercial information, was voluntarily obtained from a person (Sikorsky), is customarily kept confidential by Sikorsky, and therefore is protected by FOIA Exemption 4, 5 U.S.C. § 522(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905;

   b. The information at issue is confidential commercial information obtained from a person (Sikorsky), there is currently actual and potential competition, release or disclosure of the information likely would result in substantial competitive harm to Sikorsky in current and/or future domestic and international competitions for the same or similar products and

  services, and the information therefore is protected by FOIA Exemption 4,

  5 U.S.C. § 522(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905; and

c. DCMA's decision to release the information at issue is arbitrary,

  capricious, or otherwise contrary to law in violation of the Administrative

  Procedure Act, 5 U.S.C. §§ 701-706.

## PRAYER FOR RELIEF

WHEREFORE, Sikorsky respectfully requests the Court to:

(A) Declare that the information at issue is confidential commercial information, was voluntarily obtained from a person (Sikorsky), and is customarily kept confidential by Sikorsky, and is therefore protected by FOIA Exemption 4, 5 U.S.C. §§ 522(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905;

(B) Declare that the information at issue is confidential commercial information obtained from a person (Sikorsky), there is currently actual and potential competition, and the release or disclosure of the information likely would cause Sikorsky to suffer substantial competitive harm in current and/or future domestic and international competitions for the same or similar products and services, and therefore the information is protected by FOIA Exemption 4, 5 U.S.C. § 522(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905;

(C) Declare that DCMA's decision to release the information at issue is arbitrary, capricious, or otherwise contrary to law in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706;

(D) Permanently enjoin DOD, DCMA, and their officers, agents and employees, and those acting in concert with them, from disclosing the information at issue; and

  (E)  Order such other and further relief as may be deemed just and proper by the Court.

               Respectfully submitted,

               */s/ Robert K. Huffman*
               ROBERT K. HUFFMAN (DC. BAR NO. 219915)
               EMMETT B. LEWIS (D.C. BAR NO. 308627)
               MILLER & CHEVALIER CHARTERED
               655 Fifteenth Street, N.W.
               Suite 900
               Washington, D.C. 20005-5701
               (202) 626-5824
               (202) 628-0858 facsimile

               Attorneys for Plaintiff
               Sikorsky Aircraft Corporation

*Of Counsel*:

LEAH E. FRAZIER (DC. BAR NO. 492540)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005-5701
(202) 626-6086
(202) 628-0858 facsimile

Dated: December 12, 2005