# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SIKORSKY AIRCRAFT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: 05-2373 (RWR) |
| | ) | |
| UNITED STATES DEPARTMENT OF DEFENSE et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants hereby moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law.

In support of this motion, Defendants respectfully submit the attached memorandum of points and authorities with attachments, a statement of material facts not in genuine dispute, the Administrative Record[1] compiled in this case, and a proposed order.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

---

[1] This motion is being submitted via the Court's ECF system. However, because the Administrative Record is being filed under seal and must be manually filed, it will be filed in the Clerk's office tomorrow, March 24, 2006.

1

_____
RUDOLPH CONTRERAS D.C. Bar No.  434122
Assistant United States Attorney


_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20530
(202) 353-9895

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIKORSKY AIRCRAFT CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| UNITED STATES DEPARTMENT OF DEFENSE et al. | ) ) ) |
| Defendants. | ) ) ) |

Civil Action Number: 05-2373 (RWR)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this "reverse" Freedom of Information Act (FOIA) case plaintiff, Sikorsky Aircraft

Corporation (Sikorsky), seeks to prevent defendant, the United States Department of Defense,

Defense Contract Management Agency ("DCMA"), from releasing information in response to a

FOIA request.  The information at issue are DCMA Corrective Action Requests (CARs) directed

to Sikorsky relating to production of the Black Hawk helicopter and it's variants.

Plaintiff's claims arise under the Administrative Procedure Act, 5 U.S.C. §§ 702, et seq.

("APA"), and the Freedom of Information Act, 5 U.S.C. § 552, et seq ("FOIA").  In response to a

FOIA request from a local television station seeking CARs issued by DCMA to Sikorsky and

Sikorsky's responses, DCMA decided to disclose the CARs but not Sikorsky's responses to

them.

Sikorsky contends that such a disclosure would violate FOIA Exemption 4 and the Trade

1

Secrets Act. As demonstrated below, and in the Administrative Record filed in this case, the Department has properly concluded that the information Sikorsky seeks to have withheld must be released under the FOIA.  Accordingly, summary judgment for defendant is appropriate in this case.

## FACTS

Defendant respectfully refers the Court to the Statement of Material Facts Which Are Not in Genuine Dispute filed herewith.

## ARGUMENT

I.    **THIS COURT'S REVIEW OF THE DEPARTMENT'S RELEASE DECISION IN RESPONSE TO THIS FOIA REQUEST IS LIMITED TO THE ADMINISTRATIVE RECORD IN THIS CASE.**

The Supreme Court's decision in Chrysler Corp. v. Brown, 441 U.S. 281, 317-18 (1979), established that a party's right to judicial review of an agency's decision to release records in response to a FOIA request arises under the APA.  Accordingly, an agency's decision can be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" — the appropriately "narrow" standard for review of informal agency action under Section 706(2) (A) of the APA.  See Camp v. Pitts, 411 U.S. 138, 142 (1973); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413-15 (1971).  As the Court of Appeals for this Circuit has explained, "[u]nder the arbitrary and capricious standard of review, [courts] do not 'substitute [their] judgment for that of the agency.'"  Bartholdi Cable Co. v. FCC, 114 F. 3d 274, 279 (D.C. Cir. 1997) (citation omitted); see also CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1153-54 (D.C. Cir. 1987).  Instead, the reviewing court should "look only to see whether the agency action reflects a 'clear error in judgment.'"  Bartholdi Supra. (citations omitted); see also

2

NOW v. Social Security Admin., 736 F.2d 727, 745 (D.C. Cir. 1984) (per curiam) (Mikva J. & McGowan J., concurring).

This Court has previously addressed the limited scope of review to be applied in "reverse" FOIA cases, explaining that "where an agency wants to release information but the submitter of that information objects, the court may set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Under this deferential standard of review, a court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" McDonnell Douglas Corp. v. NASA, 895 F. Supp. 319, 325 (D.D.C. 1995) (quoting Overton Park, 401 U.S. at 416), vacated as moot, 88 F.3d 1278 (D.C. Cir. 1996) ("reverse" FOIA suit).

Applying these principles in the instant case, it is clear that the DCMA's decision to release the Corrective Action Requests cannot be regarded as "arbitrary and capricious" under the APA. The administrative process in this case was thorough. The Department accorded Sikorsky an opportunity to present its arguments, and it carefully reviewed the information at issue to determine what information fell within FOIA's Exemption 4. See Declaration of Colonel Jamie L. Adams DEX 1.

As explained below, the Administrative Record demonstrates that the Department's decision is supported by the applicable law.

## II. THE FOIA IMPOSES AN AFFIRMATIVE OBLIGATION ON THE DEPARTMENT TO DISCLOSE ALL NONEXEMPT INFORMATION.

In accordance with Supreme Court decisions interpreting the FOIA, this Court has observed that "[t]he basic policy of FOIA is one of disclosure." Martin Marietta Corp. v. Dalton,

974 F. Supp. 37, 40 (D.D.C. 1997) (citations omitted).  Information is exempt from release under

the FOIA only if it is covered by one of the nine exemptions under the statute.  See 5 U.S.C. §

552(b).  Moreover, a submitter of information "seeking to prevent a disclosure the government

itself is otherwise willing to make assumes [the] burden" of justifying nondisclosure.  Martin

Marietta, 974 F. Supp. at 40 n.4.

In this case, Sikorsky is challenging DCMA's decision to disclose CAR's produced

during inspections conducted by DCMA pursuant to contracts between the government and

Sikorsky.  DCMA has determined these CARs are not protected by Exemption 4.  As this Court

explained in Martin Marietta, the FOIA's purpose is served by release of such information.  See

id. at 40-41 (citing United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,

489 U.S. 749, 773 (1989)).  In the words of this Court:

> In perhaps no sphere of governmental activity would [FOIA's] purpose appear to be more
> important than in the matter of government contracting.  The public … is entitled to
> know just how and why a government agency decided to spend public funds as it did; to
> be assured that the competition was fair; and, indeed, even to learn how to be more
> effective competitors in the future.

Martin Marietta, 974 F. Supp. at 41.  The public similarly is entitled to know that the government

got what it paid for and that a contractor is meeting its obligation to provide quality goods.

Thus, although Sikorsky might "prefer that less be known about its operations," Martin

Marietta, 974 F. Supp. at 41, the Department's decision to release the information at issue, in the

absence of competitive harm, is in full accordance with the policy underlying the FOIA.


III.    THE DEPARTMENT CORRECTLY DETERMINED THAT

4

## EXEMPTION 4 OF THE FOIA DOES NOT PROHIBIT
## RELEASE OF THE DISPUTED INFORMATION.

Exemption 4 is not a general "privacy" exemption for companies who do not want certain information to be publicly disclosed.  Indeed, corporations and business associations possess no protectible privacy interests.  Sims v. CIA, 642 F.2d 562, 572 n.47 (D.C. Cir. 1980) rev'd in part on other grounds 471 U.S. 159.  FOIA Exemption 4 protects "trade secrets and commercial or financial information obtained from a person, [that is] privileged or confidential. 5 U.S.C. § 552(b)(4).  In order to bring a matter (other than a trade secret) within the orbit of FOIA Exemption 4, it must be shown that the information is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential.  Nat'l Parks & Conserv. Assoc. v. Morton, 498 F.2d 765 (D.C. Cir. 1974).

The information being released by DCMA does not contain trade secrets as defined in Exemption 4.  Case law in this circuit adopts a narrow definition of "trade secret." The D.C. Circuit has stated "In our opinion, the term "trade secrets" in Exemption 4 of the FOIA should be defined in its narrower common law sense, which incorporates a direct relationship between the information at issue and the productive process. Accordingly, we define trade secret, solely for the purpose of FOIA Exemption 4, as a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort. This definition, we believe, hews more closely to the language and legislative intent of the FOIA than does the Restatement approach." Public Citizen Health Research Group v. Food & Drug Admin., 704 F.2d 1280, 1288-1289 (D.C. Cir. 1983).  In the administrative process, plaintiff presented no

5

substantiation of any of the documents or information being trade secrets. Sikorsky did not assert any of the information to be a trade secret, but, rather, relied on the Trade Secrets Act protection for any information found exempt under FOIA Exemption 4. (AR 434,435)

Information failing to meet the definition of trade secret, may still be protected by Exemption 4 if it is commercial or financial information. Unlike "trade secret" the term "commercial information" is broad with the words given their ordinary meaning. Public Citizen Health Research Group v. Food & Drug Admin., 704 F.2d 1280, 1290 (D.C. Cir. 1983). "Commercial information" includes not only information that reveals basic commercial operations but also information in which the submitter has a "commercial interest". Id. at 1290. All of the responsive documents in this case relate to government inspections of Sikorsky's Black Hawk helicopter manufacturing process. The information is considered private and confidential by plaintiff. Thus, the information sought is clearly "commercial" within the meaning of Exemption 4.

The relevant question thus becomes whether the information is confidential within the meaning of Exemption 4. In its en banc decision in Critical Mass Energy Project v. NRC, 975 F.2d 871 (D.C. Cir. 1992), the Court of Appeals for this Circuit established two distinct standards to be used in determining whether commercial or financial information submitted to an agency is "confidential" under Exemption 4. For information "voluntarily" submitted to the government, a new test was announced in the decision, such information is categorically protected provided it is not "customarily" disclosed to the public by the submitter. Id. For information that is "required" to be submitted to the government, the test for confidentiality continues to be the one set forth in National Parks & Conservation Association v. Morton, 498

6

F.2d 765 (D.C. Cir. 1974).  Under the National Parks test, commercial or financial information is considered to be confidential for purposes of Exemption 4 if disclosure of the information is likely to have either of the following effects: "(1) to impair the government's ability to obtain necessary information in the future or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  498 F.2d at 770.

### A.  The Government had a Contractual Right to Obtain the Information

Plaintiff seeks a declaratory judgment that "the information at issue is confidential commercial information, was voluntarily provided to DCMA, is customarily kept confidential by Sikorsky and therefore is protected by FOIA Exemption 4, 5 U.S.C. § 552(b)(4) and the Trade Secrets Act, 18 U.S.C. § 1905.  Compl. Prayer for Relief.  In the administrative process plaintiff argued that the CARs were voluntarily provided because they are not required by statute regulation or contract. AR - 412. Defendant disagrees that the information contained in the documents at issue was voluntarily provided.  Rather, the Government had a contractual right to inspect the helicopters being manufactured by Sikorsky.  DEX 1 ¶ 10a.

In determining whether an information submission is mandatory or voluntary, the Court of Appeals for the D.C. Circuit has established an objective test.  The Court held that "actual legal authority, rather than parties' beliefs or intentions, governs judicial assessments of the character of submissions."  Center for Auto Safety v. National Highway Traffic Safety Administration, 244 F.3d 144, 149 (D.C. Cir. 2001).  In this case, the information concerning Sikorsky's manufacturing process were observations by Government inspectors made during the course of contractually authorized inspections.  The Government's contractual right to inspect Sikorsky's manufacturing process is derived from the Inspection Clause that appears in every

7

Government contract.  The specific Inspection Clause contained in most contracts requiring the

delivery of supplies (e.g. helicopters), including contracts between DCMA and Sikorsky, is

Federal Acquisition Regulation (FAR) 52.246-2, Inspection of Supplies -Fixed Price, 48 C.F.R.

52.246-2. Paragraph (c) of the clause gives the Government the right to inspect helicopters being

manufactured by Sikorsky.  Paragraph (c) states:

> The Government has the right to inspect and test all supplies called for by the
> contract, to the extent practicable, at all places and times, including the period of
> manufacture, and in any event before acceptance.

Clearly, the Government has the right to inspect the supplies, in this case helicopters, being

manufactured at Sikorsky's plants.  Because of this contractual requirement, Sikorsky may not

prevent DCMA quality assurance personnel from performing their inspection and testing duties.

Therefore, even if Sikorsky is correct and the information contained in CARs is obtained from

Sikorsky, the information is mandatory and must be provided.

Plaintiff seeks to characterize the information in CARs as voluntary rather than

mandatory by arguing that Sikorsky and DCMA have numerous informal contacts regarding

corrective actions.  AR-414, 429, 437.   The informal nature of exchanges of information

regarding actions taken in response to CARs does not alter the requirement under 48 C.F.R.

52.246-2 for Sikorsky to submit to inspections.  The government clearly had a contractual right

to conduct inspections making these inspections mandatory, not voluntary.

Although plaintiff puts forth allegations regarding both prongs of the National Parks test,

it has not met the stringent standard imposed by FOIA that favors release.

**B. Release Will Not Impair the Government's Ability to Collect Such Information in the Future**.

Plaintiff contends that release of the information contained in the documents would impair DCMA's ability to obtain information of the same quality, reliability, and detail in the future and would adversely affect the effectiveness and efficiency of DCMA's quality control program. The government is in the best position to determine the effect of disclosure on future bidding situations. As a result, courts should defer to the administrative agency's determination that release will not cause impairment. <u>McDonnell Douglas Corp. v. NASA</u>, 981 F. Supp. 12, 15-16 (D.D.C. 1997) rev'd on other grounds 180 F.3d 303, "if the agency is willing to release information, it can be safely assumed that the agency is acting to protect its ability to contract in the future." <u>Center for Public Integrity v. DOE</u>, 191 F. Supp. 2d 187, 196 (D.D.C. 2002). Plaintiff claims that if information were released, it would implement one or more "safeguards" to mitigate the harm it allegedly would suffer. Plaintiff first suggests it would aggressively challenge each CAR, requiring DCMA to demonstrate why the subject CAR is contrary to a particular contract or specification. AR 416. The inspection clause, 48 C.F.R. 52.246-2, determines the type and amount of information that the government is entitled to and allows the government to reject non-conforming supplies. The government's ability to issue CARs is amply protected by these contract provisions.

Plaintiff next contends that it would end its practice of sharing its quality assurance reviews. The actions Sikorsky says it will take include withholding from DCMA results of what Sikorsky refers to as a "Kaizen event," denying DCMA access to plaintiff's quality assurance meetings and denying DCMA access to plaintiff's quality assurance documents. AR 416,

9

431,432.  However, DCMA has determined that Sikorsky's responses to the CARs are not

releasable.  DEX 1 ¶ 10. Neither the results of the "Kaizen event," or any other quality assurance

document from plaintiff is being released.   Release of the CAR itself should have no effect on

the information shared by Sikorsky or other contractors with the government.

The government's ability to gather the information it needs to conduct inspections comes from its

contractual rights found in FAR Clause 52.246-2(c), 48 C.F.R. 52.246-2(c).  Plaintiff and other

contractors cannot preclude the government from gaining this information without breaching

their contracts.  To the extent that plaintiff provides information voluntarily in response to these

inspections, the information is being withheld from release.


### C.  Plaintiff Will Not Suffer Competitive Harm, as Defined in Exemption 4, from The Release of this Information

As to the second prong of the National Parks test, the Court of Appeals for the District of

Columbia Circuit has emphasized that competitive harm in the FOIA context is limited to harm

flowing from the affirmative use of proprietary information by competitors, not simply any injury

to competitive position, as might flow from customer or employee disgruntlement.  Public

Citizen Health Research Group v. FDA, 704 F2d 1280, 1291 n. 30 (D.C. Cir. 1983).   Plaintiff

claims that its competitors would use the information contained in the CAR to discredit

Sikorsky's quality control system in the eyes of Sikorsky's competitors.  By doing so, Sikorsky's

competitors will make their own proposals and products look more attractive and could underbid

Sikorsky. AR- 420, Compl ¶ 22.

However, unwarranted criticism of this type or embarrassment is not the kind of

competitive harm protected by Exemption 4.  It does not flow from the affirmative use of

proprietary information.   See Occidental Petroleum Corp. v. SEC, 873 F.2d 325 (D.C. Cir.

1989).   This court addressed a similar claim in Center to Prevent Handgun Violence v. United

States Dep't of the Treasury, 981 F. Supp. 20, 23 (D.D.C. 1997).   In that case, the Bureau of

Alcohol, Tobacco and Firearms (ATF) argued that releasing reports would subject licensees to

unwarranted criticism and harassment.   The Court rejected that argument, concluding "However

that may be, the harm contemplated by Exemption 4 is that which may flow from competitors'

use of the released information, not from any use made by the public at large or customers."

Center to Prevent Handgun Violence v. United States Dep't of the Treasury, 981 F. Supp. 20, 23

(D.D.C. 1997); citing Public Citizen Health Res. Grp. v. FDA, 704 F.2d 1280 (D.C. Cir. 1983).

Plaintiff's claims here are essentially identical to those raised by the ATF.   The possibility that a

Sikorsky competitor might criticize Sikorsky to a customer is not an affirmative use of the

proprietary information by the competitor.   The possibility of unfavorable publicity is insufficient

for showing competitive harm.   See e.g., CNA Fin. Corp. v. Donovan, 830 F.2d 1132 (D.C. Cir.

1987).   Plaintiff also argues that release of all the CARs and the responses to them would allow a

competitor to learn the strengths and weaknesses of Sikorsky proprietary quality control system

through the "Mosaic" presented.   AR 421, DEX 1 ¶ 11.   Of course, DCMA's decision not to

release plaintiff's responses would greatly reduce the clarity of any "Mosaic" revealed by the

release.   However, even considering this argument, it is still the same type of embarrassment

rejected by the Court in Center to Prevent Handgun Violence supra.

     McDonnell Douglas Corp. v. United States, 375 F.3d 1182, at 1189 (D.C. Cir. 2004) does

not change the analysis.   In submissions to DCMA, plaintiff contended that competitive harm of

any kind, including simple embarrassment, is sufficient to bring information within the

"competitive harm" prong of National Parks. Plaintiff relied heavily on <u>McDonnell Douglas</u> for the proposition that "underbidding includes making one's proposal more attractive to the customer in ways in addition to price." AR 420. However, the Court in <u>McDonnell Douglas</u> addressed a competitors ability to use confidential information directly in the bid process to make its proposal more attractive. The Court did not contemplate the competitive tactic that Sikorsky postulates in this case, i.e., that a competitor would attempt to make its own products and proposals look more attractive by simply directing customer attention to the shortcomings described in the Government's inspections of Sikorsky's manufacturing processes.

The issue in <u>McDonnell Douglas</u> was whether option prices under an already awarded Air Force contract could be released. McDonnell Douglas contended that release of the option prices would cause substantial competitive harm because competitors would know how to underbid them if the option years were re-competed. But the Air Force rejected this position, arguing instead that, because any re-competition would include factors other than price, the effect of underbidding on price alone would be substantially diluted. The District Court accepted the Air Force argument and McDonnell Douglas appealed to the D.C. Circuit, pointing to a case of its own <u>McDonnell Douglas v. NASA</u>, 180 F.3d 303 (D.C. Cir. 1999), in which the D.C. Circuit had soundly rejected the same argument. The D.C. Circuit then agreed that the Air Force was making the same argument that had been rejected in 1999, and ruled that the release of such option prices was "contrary to law." Thus, it was only in the context of overruling the District Court on this narrow point that the D.C. Circuit used the "more attractive" language on which plaintiff relies:

The District Court clearly used the term "underbid" to mean "bid a lower price", but that was not how we used that term in NASA; there,

> "underbidding" refers to making a bid more attractive overall, not with respect only to price, so it will be chosen by the Government. See NASA, 180 F.3d at 303…. [Emphasis added].

Then, after making this observation, the court went on to state:

> … the agency there [in NASA] made the same argument as does the Air Force here, viz., that the NASA would not accept a bid merely because it offered a lower price but instead would consider nonprice factors in selecting the winning bid. We rejected this argument summarily in NASA, and we reject it again here ….

McDonnell Douglas, 375 F.3d at 1190.

Thus, McDonald Douglas involved the direct use of pricing information in forming a competitive proposal. The language relied on by plaintiffs, stands only for the proposition that option prices may be protected under Exemption 4 even if a future competition would also involve factors other than price. And, since it was only in this limited context that the court spoke of "…making a bid more attractive overall," this language cannot be read to encompass the tactic of making one's own proposal look better by simply pointing to the shortcomings exposed in an audit of a competitor's operation.


## CONCLUSION


Defendants' decision to release the CARs is neither arbitrary, capricious nor contrary to law. Rather the release of the documents is compelled by, and consistent with the goals of, the FOIA.

13

Respectfully submitted,


_____/s_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney



_____/s_____
RUDOLPH CONTRERAS D.C. Bar No.  434122
Assistant United States Attorney



_____/s_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C.  20530
202-353-9895  / FAX 202-514-8780

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIKORSKY AIRCRAFT CORPORATION, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action Number: 05-2373 (RWR) |
| UNITED STATES DEPARTMENT OF DEFENSE et al. ) ) ) ) | |
| Defendants. ) ) ) | |

## ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment.

Based upon the motion, the opposition thereto, and the entire record herein, it is this _____ day of

_____, 20___ hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that judgment shall be entered for Defendant, and that this matter is

hereby DISMISSED WITH PREJUDICE.

This is a final, appealable order.

SO ORDERED.

_____
Richard W. Roberts
United States District Judge

Copies to:
The Parties via ECF